IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM CUEVAS-LOPEZ

   Plaintiff

          v.

COMMISSIONER OF SOCIAL
SECURITY (MICHAEL J. ASTRUE)

   Defendant

**Civil No. 09-1905 (SEC)**

**OPINION AND ORDER**

This is an action brought under §205(g) of 42 U.S.C. §405(g), the "Social Security Act." Plaintiff William Cuevas-Lopez ("Plaintiff") seeks a review of the Commissioner of Social Security's ("the Commissioner") denial of his application for disability and disability insurance benefits. Docket No. 1. The Commissioner filed a Memorandum of Law in support of the decision to deny benefits (Docket No. 19) and Plaintiff filed his own Memorandum of Law in opposition (Docket No. 17). After reviewing the parties' filings, and the applicable law, the decision of the Commissioner denying Plaintiff disability benefits is **AFFIRMED**.

**Factual and Procedural Background**

Plaintiff filed an application for disability and disability insurance benefits on December 15, 2004, alleging disability since October 20, 2004 due to vision problems, anxiousness, a kidney condition, left leg pain, diabetes, and low back pain. Record of Transcript ("T.R.") 14, 400. The application was denied initially on July 20, 2005, T.R. 28, and upon reconsideration on September 19, 2005, T.R. 23. Plaintiff then requested a hearing, which was held on February 2, 2007 before Administrative Law Judge ("ALJ") Solomon Goldman. T.R. 398. On March 26, 2007, the ALJ issued an decision holding that Plaintiff is not disabled as defined in the Social Security Act either under general disability, or statutory blindness. T.R. 18. Plaintiff

**CIVIL NO. 09-1905 (SEC)** 2

appealed the ALJ's decision, yet the Appeals Council denied Plaintiff's request, T.R. 4, rendering the ALJ's decision the final decision of the Commissioner, see 20 C.F.R. § 404.981. Having exhausted his administrative remedies, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  Docket No. 1.

According to the record, Plaintiff was born on July 8, 1945.  T.R. 37.  He was fifty-nine years old on October 20, 2004, the alleged disability onset date, T.R. 37, although he worked until March 2005, T.R. 402.  Plaintiff has a fifth-grade education and has previously worked in restaurants, factories, carpentry and agriculture.  T.R. 69, 404.  His last job was packing oranges.  T.R. 403.  However, Plaintiff stated at the administrative hearing that, throughout his life, he worked without reporting income tax for several years because he was unaware of his obligation to file taxes.  T.R. 403, 405.

During the hearing, Plaintiff testified about his numerous health problems.  He stated that he could not work due to dizzy spells and kidney pain, T.R. 404, in addition to leg and back pain, T.R. 404.  Plaintiff has also suffered from diabetes for approximately eight years, T.R. 406, for which Plaintiff's wife administers insulin twice a day, T.R. 411.  He has vision problems, and claims that he cannot see at night, nor read text, despite wearing eye glasses.  T.R. 405.  Plaintiff also stated that his mood is affected by the weather and that it is difficult to remain either standing or seated for more than an hour.  T.R. 410.  According to his testimony, he cannot carry any weight, has trouble walking more than fifteen or twenty minutes, and occasionally needs his wife's help to bathe.  T.R. 410-11.

Additionally, Plaintiff testified about his mental condition, for which he is treated every one to two months.  T.R. 407.  According to Plaintiff, he has trouble sleeping and has bumps on his head, which he scratches.  T.R. 407.  These symptoms led to an involuntary hospitalization at Monitec Hospital for a short period of time.  T.R. 407.

**CIVIL NO. 09-1905 (SEC)**                                                        3

*Medical Evidence*

On January 5, 2005, Plaintiff was examined by Dr. Jovino Diaz-Fernandez, an optometrist, who found that even though Plaintiff presented blurry vision on both eyes, his ocular history was unremarkable. T.R. 119. Dr. Diaz found that Plaintiff had small, round, reactive pupils with no afferent pupillary defect, normal extraocular mobility test, abnormal color vision, healthy optic nerves, and no apparent retinal pathologies. T.R. 119. During this visit, Plaintiff's best corrected visual acuity from a distance was 20/40 and 20/25 on the right and left eye, respectively, and 20/40, 20/30 from a short distance. T.R. 119. Dr. Diaz referred Plaintiff to an ophthalmologist for a dilated fundus examination. T.R. 119.

Thereafter, on May 2nd, 2005, Plaintiff saw Dr. Valeriano Alicea-Cruz, an ophthalmologist, who reported a visual acuity after correction of 20/25 in the right eye and 20/20 in the left one. T.R. 123. Dr. Alicea diagnosed type II diabetes mellitus, incipient non proliferative diabetic retinopathy, bilateral posterior vitreous detachment, error of refraction, nephrolithiasis, and assessed a poor prognosis. T.R. 124.

Plaintiff presented numerous other reports that evidence his remaining conditions including hypertension, diabetes, and his mental conditions. See T.R. 125-397. These documents, however, were not used in the ALJ's disability determination and are not under review by this Court. See T.R. 16-18.

**Standard of Review**

The scope of this Court's judicial review of the Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. §405(g). Section 405(g) provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)), the United States Supreme Court defined "substantial evidence" as "more

**Civil No. 09-1905 (SEC)**                                                                 4

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401; see also Tsarelka v. Secretary of H.H.S., 842 F. 2d 529, 534 (1st Cir. 1987); Chaparro v. Massanari, 190 F. Supp. 2d 260, 262 (D.P.R. 2002). Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. See Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). It is, however, the Secretary's responsibility to choose between conflicting evidence." Burgos López v. Secretary of H.H.S., 747 F.2d, 37, 41 (1st Cir. 1984); see also Tremblay v. Secretary of H.H.S., 676 F. 2d 11, 12 (1st Cir. 1982); Freeman v. Barnhart, 274 F.3d at 609 (citing Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001). When supported by substantial evidence, the Secretary's findings of fact shall be conclusive and shall not be overturned. 42 U.S.C. §405(g).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he or she is both disabled within the meaning of the Social Security Act, and insured for disability insurance benefits. 42 U.S.C. § 423 (a)(1)(A) & (E); see also Bowen v. Yuckert, 482 U.S. 137, 146-47, n.5 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is (1) generally disabled, or unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or" (2) statutorily blind within the meaning of the Social Security Act. 42 U.S.C. §§416(i)(1) and 423(d)(1).

Apart from establishing inability to engage in substantial gainful activity, a claimant for general disability must be fully insured as defined in 42 U.S.C. §414 and comply with the 20/40 requirement. §§ 416(i)(3) and 423(c)(1); 20 C.F.R. 404.130(b)(1996). Fully insured status is

**Civil No. 09-1905 (SEC)**                                                                5

fulfilled if the claimant has at least 40 quarters of coverage,[1] or "one quarter of coverage for each calendar year elapsing after 1950 or, if later, after the year in which you became age 21, and before the year you reach retirement age...." 20 C.F.R. §404.110(b). The 20/40 requirement entails having twenty quarters of coverage in the last forty quarters, ending with the quarter in which the disability occurred. 42 U.S.C. §§416(i)(3)(B) and 423(c)(1)(B); 20 C.F.R. 404.130(b)(2). In other words, in the 10 years (40 quarters) leading up to when the disability began, a claimant must have worked and paid taxes for at least 5 years (20 quarters).

Under the Social Security Act, a claimant is statutorily blind if, having obtained 55 years of age and being fully insured, he or she has a "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. §§416(i)(1)(B) and 423(d)(1)(B). "An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered... as having a central visual acuity of 20/200 or less." 42 U.S.C. §416(i)(1)(B); 20 C.F.R. §404.1581. Plaintiff's blindness must be the cause claimant is unable to engage in substantial gainful activity "comparable to any gainful activity in which he has previously engaged with some regularity...." 42 U.S.C. §423(d)(1)(B).

A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

---

[1] Table for determining the quarters of coverage a claimant needs to be fully insured. Applicants born after January 2nd, 1929 need at least 40 quarters of coverage to be fully insured. 20 C.F.R. §404.115(a). A quarter of coverage is a legal term used to determine eligibility for Social Security Benefits. As a person works and pays taxes, he or she earns quarters of coverage, up to a maximum of four quarters a year. A Glossary of Social Security Terms, Social Security Online, Jul. 2, 2010.

**Civil No. 09-1905 (SEC)**                                                                 6

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; see, e.g., Goodermote v. S.H.H.S., 690 F.2d 5, 6-7 (1st Cir. 1982). However, "all five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**Applicable Law and Analysis**

Plaintiff's application for disability benefits was reviewed by the ALJ for both general disability and statutory blindness. See T.R. 16-18. The ALJ held that Plaintiff was entitled to neither since (1) Plaintiff did not meet the 20/40 requirement and was thus ineligible to receive general liability benefits, and (2) Plaintiff's impaired vision did not meet the statutory definition of blindness. See T.R. 17. Claimant, however, argues that the ALJ committed several errors in finding Plaintiff was not entitled to disability benefits, namely in holding that claimant could perform his past agricultural work. Docket No. 17. These alleged errors include (1) failure to consider Plaintiif's non-visual impairments, (2) failure to review the findings of claimant's treating physicians who found claimant severely impaired, (3) failure to enlist a medical expert to review the record and make the disability determination, (4) failure to enlist a vocational expert to determine if Plaintiff was able to do his past work, and (5) failure to consider the evidence as a whole by only focusing on evidence favorable to the Commissioner. Docket No. 17. Additionally, Plaintiff argues that the case should be remanded to the Commissioner for a recalculation of his quarters of coverage, given that additional earnings evidence was submitted after the administrative hearing to comply with the 20/40 rule. Docket No. 17.

Defendant, on the other hand, argues that Plaintiff is ineligible for general disability benefits because, since he failed to meet the 20/40 rule, he is categorically ineligible for

**Civil No. 09-1905 (SEC)**  7

disability benefits, and would be ineligible despite considering the new earnings information. Docket No. 19. Furthermore, Defendant argues that Plaintiff is also ineligible for disability for statutory blindness because he does not meet the Act's legal definition of blind. Docket No. 19.

This Court must examine the parties' claims and evaluate whether there was substantial evidence to support the ALJ's determinations. In so doing, we shall first determine whether Plaintiff is entitled to general disability benefits. As previously stated, to receive general disability benefits Plaintiff must be fully insured, meet the 20/40 requirement, and be unable of engaging in any substantial gainful activity. 42 U.S.C. §423(c)(1) & (d)(1)(A). The ALJ determined that Plaintiff was fully insured. T.R. 16. Specifically, according to the record, Plaintiff has fifty-three (53) quarters of coverage throughout his work history, see T.R. 47-48, thereby meeting the 40 quarters of coverage requirement to be fully insured, see 20 C.F.R. §404.110(b); see also 20 C.F.R. §404.115(a). However, the ALJ held that Plaintiff was not entitled to general disability benefits because he did not comply with the 20/40 rule, T.R. 17, and this Court agrees. Based on the record before the Court, Plaintiff accumulated only 10 quarters of coverage in the 40 quarters preceding Plaintiff's application for benefits, see T.R. 48, when he needed 20 to qualify for benefits, 20 C.F.R. §404.130.

Moreover, Plaintiff's argument that the case should be remanded to review new earnings information also fails. The record shows that Plaintiff provided evidence of earnings for 2002, 2003, 2004, and 2005. See T.R. 53-56. If earnings are recalculated to include the new evidence, even when viewed most favorably to the Plaintiff, he would still not comply with the 20/40 rule. Eight quarters for years 2002 and 2003 are already included in the current calculation. If 8 more were added for years 2004 and 2005, 3 quarters for which Plaintiff is not entitled to since he worked only until March 2005, Plaintiff would still come up short of meeting the 20/40 rule with only 18 quarters. Since Plaintiff does not meet the 20/40

**Civil No. 09-1905 (SEC)**                                                                                                          8

requirement, and would not comply with it despite the new earnings information, claimant is ineligible for general disability benefits. See Harvell v. Chater, 87 F.3d 371, 373 (9th Cir. 1996) (stating that "Harvell earned no quarters of coverage during the relevant forty-quarter period, and ... was therefore not eligible for disability insurance benefits."). A determination of whether Plaintiff can engage in substantial gainful activity is superfluous and irrelevant because Plaintiff is categorically barred from general disability benefits for failure to meet the 20/40 rule. See Freeman, 274 F.3d at 608 (holding that the determination may be concluded at any step along the process). A qualitative analysis of Plaintiff's condition and the seriousness of his mental and physical impairments would have no bearing on the result.

The second issue is to determine whether there is substantial evidence to support the ALJ's holding that Plaintiff is not statutorily blind within the meaning of the Social Security Act. It is clear from the record that Plaintiff complies with the following two requirements to be eligible for statutory blindness disability benefits: he is past the age of 55, see T.R.37, and he is fully insured. Nonetheless, Plaintiff's visual conditions do not meet the Social Security Act's definition of statutory blindness. After reviewing Plaintiff's records, the ALJ found that Plaintiff suffered from the following severe impairments: incipient non proliferative diabetic retinopathy, bilateral posterior vitreous detachment and error of refraction. T.R. 17. However, while 42 U.S.C. §416(i)(1)(B) requires that a claimant have a "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens[,]" Plaintiff's last examination with Dr. Alicea-Cruz revealed visual acuity after correction of 20/25 in the right eye and 20/20 in the left one, T.R. 123. Additionally, a previous examination by Dr. Diaz-Fernandez showed a corrected visual acuity from a distance was 20/40 and 20/25 on the right and left eye, respectively, and 20/40, 20/30 from near. T.R. 119. This Court agrees with Defendant that substantial evidence supports the ALJ's decision that Plaintiff's impaired vision did not rise to the level of legal

**Civil No. 09-1905 (SEC)**  9

blindness. Based on the evaluations and medical reports from Dr. Diaz-Fernandez and Dr. Alicea-Cruz, both examining physicians,[2] Plaintiff's corrected vision bordered on normal and did not even meet the level of impairment required for statutory blindness. Both these evaluations were submitted by the Plaintiff, and there is nothing on the record challenging their accuracy. Thus there is substantial evidence supporting the ALJ's holding that Plaintiff does not meet the statutory definition of blindness, and as a result, he is not entitled to disability benefits.

Plaintiff contends that, nonetheless, the ALJ erred in making the determination that Plaintiff could return to his past work. Docket No. 17. Defendant correctly points out that the ALJ was not required to make this determination in order to deny Plaintiff disability benefits. Docket No. 19. A qualitative analysis of Plaintiff's impairments was not necessary for general disability since he was categorically barred due to his failure to meet the 20/40 rule. Nor was it necessary under the statutory blindness analysis since Plaintiff did not meet the legal definition of blindness.

Nevertheless, when examining statutory blindness, the ALJ inquired as to whether Plaintiff's visual impairments rendered claimant unable to perform substantial gainful activity. T.R. 17. He found that his visual acuity would not preclude him from any work activity, even work that required good binocular vision. T.R. 17-18. This Court, although finding the determination superfluous, notes that in fact, claimant's visual problems do not preclude him from engaging in his past work. Pursuant to the medical evaluation from Dr. Alicea-Cruz and Dr. Diaz-Fernandez, Plaintiff's corrected visual acuity of 20/20 does not impede him from engaging in his previous job. Albeit this Court recognizes that there is ample evidence on

---

[2] Generally, more weight should be given to an examining physician thatn to a non-examining pysician. 20 C.F.R. §404.1527(d)(1).

**Civil No. 09-1905 (SEC)** 10

record of Plaintiff's mental and physical impairments, said evidence has no bearing on whether Plaintiff's visual impairments disable him from performing his past work in an analysis for disability requirements for statutory blindness. Thus, the ALJ correctly disregarded this information under the blindness analysis, and did not make a disability determination based on non-visual impairments. Likewise, as stated before, evidence of non-visual impairments has no bearing for general disability purposes because Plaintiff was categorically ineligible for such benefits.

In light of the above, the Court find that the ALJ's decision to deny disability benefits both under general disability and statutory blindness was correct.

**Conclusion**

Based on the foregoing, the ALJ's determination is **AFFIRMED,** and the instant case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of July, 2010.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
United States District Judge